## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KEISHA FOSTER *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No._____ |
| v. | ) | 1:14-cv-04142-PGG |
| | ) | (S.D. New York) |
| CITY OF NEW YORK, | ) | |
| | ) | ORAL ARGUMENT REQUESTED |
| Defendant. | ) | |
| _____) | ) | |
| | ) | |
| LEIDOS, INC. | ) | |
| | ) | |
| Third-Party. | ) | |
| _____) | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## THIRD-PARTY LEIDOS, INC.'S MOTION TO QUASH PLAINTIFFS' SUBPOENA

Dated:  April 29, 2016

Respectfully submitted,

Douglas P. Lobel (DC Bar No. 395508)
David A. Vogel (DC Bar No. 441289)
COOLEY LLP
11951 Freedom Drive, Suite 1500
Reston, Virginia 20190-5656
Tel:    (703) 456-8000
Fax:    (703) 456-8100
E-mail:  dlobel@cooley.com
E-mail:  dvogel@cooley.com

*Counsel for Leidos, Inc.*

## TABLE OF CONTENTS

Page

RELEVANT BACKGROUND ....................................................................................2

I.    THE LAWSUITS BETWEEN THE CITY AND ITS EMPLOYEES
      INVOLVE FLSA CLAIMS BASED ON DATA IN THE "CITYTIME"
      PAYROLL SYSTEM ........................................................................................2

      A.    Plaintiffs Are Employees of Two City Agencies Who Claim They
            Have Been Underpaid ........................................................................2

      B.    Plaintiffs Base Their Damage Calculations on Data in the
            "CityTime" Payroll System ...............................................................3

      C.    Plaintiffs Have Taken Significant Discovery from the City....................4

      D.    The Cutoff for New Discovery Closed April 1; the Court
            Authorized Completion of Outstanding Discovery by May 1 ...............5

II.   LEIDOS IS THE CONTRACTOR THAT DEVELOPED CITYTIME............................6

      A.    Leidos Developed CityTime from 2000 to 2011 Under Contract to
            the City............................................................................................7

      B.    Leidos Learned in 2010 that It Was the Victim of a Massive Fraud .......7

      C.    Leidos Parted Ways with the City in 2011 and Divested all of Its
            Resources, Including Employees, It Used to Perform CityTime............8

III.  THE SUBPOENA COMMANDS LEIDOS TO PRODUCE
      DOCUMENTS RELATED TO ITS COMMUNICATIONS WITH THE
      CITY ON CITYTIME ......................................................................................8

IV.   COMPLIANCE WOULD IMPOSE AN ENORMOUS AND UNDUE
      BURDEN ON LEIDOS ...................................................................................10

      A.    Leidos Has Over 11 Million Pages of CityTime-Related
            Documents, but All in Offsite Storage and Archives ..........................10

      B.    Leidos Would Need About 23 to 44 Weeks to Restore and Review
            These Documents to Comply with the Subpoena.................................11

      C.    Leidos Estimates That the Cost of This Massive Effort Would Be
            Around $1 Million .............................................................................13

STANDARD OF REVIEW .....................................................................................14

## TABLE OF CONTENTS
### Continued

Page

ARGUMENT ..................................................................................................................14

I.  THE SUBPOENA IS UNTIMELY AND DOES NOT  AFFORD LEIDOS
    A REASONABLE TIME TO COMPLY .......................................................15

    A.  The Subpoena Is Untimely..............................................................15

    B.  Leidos Does Not Have a Reasonable Time to Comply ...................16

    C.  Leidos Cannot Comply Before Close of the Limited Extension of
        Discovery ........................................................................................17

II. THE SUBPOENA PLACES AN ENORMOUS UNDUE BURDEN ON
    LEIDOS .......................................................................................................18

    A.  Leidos Would Incur Enormous Expense to Restore,  Search for,
        Review, and Produce Responsive Documents.................................18

    B.  The Subpoena Seeks Documents Available From the City—
        Which Plaintiffs Already Have Obtained or Should Have Obtained ...................19

        1.  *The Subpoena Requests Information the City Should
            Possess* ..............................................................................20

        2.  *The City Produced Documents and Testimony  on the Very
            Topics Raised in the Subpoena* .........................................21

    C.  The Categories of Documents Are Far Too Broad and Vague...........21

III. IF THE COURT WERE TO ORDER COMPLIANCE,  IT SHOULD
     REQUIRE PLAINTIFFS TO PAY THE COSTS ..........................................22

CONCLUSION.................................................................................................24

The Court should quash the subpoena *duces tecum* served by Plaintiffs Keisha Foster, *et al.* ("Plaintiffs") on third-party Leidos, Inc. ("Leidos").  The subpoena (the "Subpoena"), attached hereto as Exhibit 1, was served on April 13, 2016, and is returnable on April 29, 2016, at a location within Washington, D.C.

Compliance with the Subpoena would require Leidos to incur massive cost (around *$1 million*) and undergo enormous effort (roughly *23 to 44 weeks of work*) to perhaps locate four categories of documents that may be scattered among over 11 million pages of records, any of which may be buried in 473 boxes in offsite storage or offsite computer archives.  The documents relate to a long-completed software development contract Leidos performed for the City of New York (the "City") from 2000 to 2011, called the "CityTime" automated timekeeping and payroll system.  Leidos has had no responsibility for the system (and no ongoing relationship with the City) since it turned the system over in 2011.

Leidos no longer employs the personnel used to supervise and perform the contract—most of whom were subcontractors anyway—due to a corporate reorganization in 2013 and other factors, including insider fraud on the contract.  As a result, Leidos has no personnel remaining with knowledge to locate responsive documents—whether it be broad categories of documents or even one, specific document.  Leidos would have to conduct an archeological expedition into its massive document collection in deep storage, having no idea what or how many responsive documents exist or where they might be.

Rule 45 certainly does not require Leidos to undertake this undue burden and expense, especially where:

- the requested records are in the City's possession and should have been obtained directly from the City in discovery;

- the Subpoena was served in violation of discovery orders that allowed completion of existing discovery, not did not authorize new fact discovery;

- Plaintiffs have failed to provide Leidos with a reasonable time to comply;

- compliance is impossible before the deadline for completion of discovery; and

- compliance requires disclosure of privileged and protected information.

Most egregious, Plaintiffs are pursuing onerous discovery from Leidos without exhausting all options with the City. During the meet and confer, Plaintiffs' counsel admitted that discovery is ongoing with the City about these documents, that they are expecting further production from the City, and they are moving to compel the City's further production. Until they have exhausted all efforts to force the City to fulfill its discovery obligations, Plaintiffs should not be burdening a third party. If Plaintiffs fail on their motions to compel the City's response, no reason exists that Leidos should be burdened instead.

Plaintiffs cannot articulate a compelling need for the documents. However, the Court can test Plaintiffs' proclaimed need for these documents—if the Court is inclined to order Leidos to undertake the massive efforts required, the Court should order Plaintiffs to pay all the costs.

## RELEVANT BACKGROUND

### I.   THE LAWSUITS BETWEEN THE CITY AND ITS EMPLOYEES INVOLVE FLSA CLAIMS BASED ON DATA IN THE "CITYTIME" PAYROLL SYSTEM

To understand the context of the Subpoena, the Court should first understand the nature of the litigation and the status of discovery. Despite the enormous number of individual plaintiffs, the claims are not complicated.

#### A.   Plaintiffs Are Employees of Two City Agencies Who Claim They Have Been Underpaid

Two groups of City employees brought two closely-related cases pending in the U.S. District Court for the Southern District of New York. One suit, *Foster v. City of New York*, No.

14-cv-4142 (PGG) ("*Foster*"), is brought by over 1,300 Child Protective Services ("CPS")

employees who work at New York City's Administration for Child Services.  The other, *De La*

*Cruz v. City of New York*, No. 14-cv-9220 (PGG) ("*De La Cruz*"), is brought by over 900 Job

Opportunity Specialists ("JOS") who work at New York City's Human Resources

Administration.[1]  While captioned separately, the *Foster* and *De La Cruz* cases are being

litigated side-by-side, with the same plaintiffs' counsel, same defendants' counsel, same district

and magistrate judges, and same discovery schedule.

Plaintiffs in both cases assert claims under the Fair Labor Standards Act ("FLSA"),

alleging that the City has not paid them as required by FLSA.  Second Amended Complaint, filed

Nov. 11, 2014 (*Foster* ECF No. 28) ("*Foster* SAC"); Complaint, filed Nov. 11, 2014 (*De La*

*Cruz* ECF No. 1) ("*De La Cruz* Compl.").

The City denies that its payments violated FLSA.  But, to the extent its payments to

Plaintiffs were not consistent with FLSA, the City contends that it acted in "good faith" and thus

should not be subject to FLSA's multiplied damages.  Answer, filed Nov. 26, 2014, at ¶ 69

(*Foster* ECF No. 30); Answer, filed Dec. 11, 2014, at ¶ 65 (*De La Cruz* ECF No. 29).

### B.    Plaintiffs Base Their Damage Calculations on Data in the "CityTime" Payroll System

Plaintiffs base their claims on the City's payroll information, including hours worked

each day or week, the compensation (or non-compensation) for those hours, and the wage rates

paid to them.  *Foster* SAC ¶¶ 34-57; *De La Cruz* Compl. ¶¶ 30-53.  The payroll data for each

employee is contained in a City-wide system called "CityTime."  *Foster* SAC ¶ 20 ("The [City's]

time records track the time worked by CPS plaintiffs including the time for which defendant fails

---

[1]    Originally, Plaintiffs joined together to file the *Foster* case, but in November 2014 the
New York court severed the JOS plaintiffs from the CPS plaintiffs, creating the *De La Cruz* case.

to pay them.  The [City's] CityTime pay system reflects time at the office."); *accord De La Cruz* Compl. ¶ 18.  CityTime is timekeeping and payroll system that allows each employee to record his or her hours of work, and then uses that data to generate payroll information.

Plaintiffs allege in their complaints that CityTime retains the data that can be used to calculate damages for each Plaintiff.  For instance, Plaintiffs allege that CityTime retains the records of some of the hours each employee worked.  *Foster* SAC ¶¶ 13 & 30; *accord De La Cruz* Compl. ¶¶ 10 & 26.  Plaintiffs also allege that the time records in CityTime can be compared to other information to determine if Plaintiffs worked more hours than those for which they were compensated.  *Foster* SAC ¶ 20; *accord De La Cruz* Compl. ¶¶ 25-26.

### C.   Plaintiffs Have Taken Significant Discovery from the City

Plaintiffs have taken ample discovery from the City concerning their time and wage records in CityTime.  As the City recently wrote in a brief, "Plaintiffs are in possession of definitive proof regarding the manner in which they have been paid and how their regular rate of pay was calculated throughout the relevant period."  Def.'s Mem. of Law in Supp. of Its Mot. to Quash the Third-Party Subpoenas Served by Pls. on Science Applications Int'l Corp. & Leidos, Inc. Pursuant to Rule 45 of the Fed. R. of Civ. P., served Apr. 19, 2016 ("City Mem."),[2] at 9.

Proving that Plaintiffs have the data they need to calculate damages, Plaintiffs' expert witness recently produced a report that purports to calculate the wages to which Plaintiffs are allegedly entitled.

Plaintiffs have also taken discovery from the City regarding the design and operation of CityTime.  Plaintiffs conducted a Rule 30(b)(6) deposition of the City's corporate representative,

---

[2]     As of the time of this writing, the City's brief has been served on Plaintiffs but not yet filed with the New York court.  All of the papers will be filed simultaneously via ECF when the briefing is completed, which should be by May 10, 2016.

a staff attorney who was involved in the creation of CityTime.  During that deposition, the

Plaintiffs took extensive testimony on the design and operation of CityTime, particularly on how

CityTime was designed to comply with FLSA requirements:

> On March 25, 2016, the City produced Georgia Pestana, the First
> Assistant Corporation Counsel, as its 30(b)(6) witness regarding
> the City's efforts to comply with the FLSA.  [Footnote omitted.]
> Ms. Pestana testified that during the CityTime programming phase,
> she participated in regular meetings with the computer
> programmers—employees of [Leidos]—as well as representatives
> from the various City agencies, to ensure that CityTime was
> programmed to correctly calculate employees' overtime rate.
> [Citation omitted.]  Ms. Pestana explained that during these
> meetings they would "run through some scenarios" and then the
> programmers would "disappear for a week" while working on the
> technical implementation of any instructions they had been given.
> [Citation omitted.]

City Mem. at 5.  The witness provided many details about these regular meetings, where

contractor personnel met with a litany of City officials to obtain instructions on how to design

CityTime.  *Id.* at 11.  Plaintiffs have not alleged that the City's representative was unprepared or

unable to answer Plaintiffs' questions.

Plaintiffs' counsel represented on a call on April 28 that they are continuing to take

discovery from the City on the issue of the design of CityTime's features related to FLSA, and

that the City has not finished its document productions on these issues.  Plaintiffs also anticipate

further motions practice to compel the City's complete production of these documents.

**D.    The Cutoff for New Discovery Closed April 1; the Court
Authorized Completion of Outstanding Discovery by May 1**

Discovery in each of the cases is in its final days.

Originally, the New York court permitted twelve months for discovery, with an initial

close on November 23, 2015.  Civil Case Management Plan and Scheduling Order, Nov. 20,

2014 (*Foster* ECF No. 29; *De La Cruz* ECF No. 28).  The court extended this deadline on

multiple occasions,[3] ultimately adding five months for discovery until April 1, 2016, except it granted a "limited" extension until May 1, 2016, to complete outstanding discovery. *See* Order, Mar. 14, 2016 (*Foster* ECF No. 95, *De La Cruz* ECF No. 92), attached hereto as Exhibit 2.

When granting this "limited" extension until May 1, the New York court endorsed the parties' representation that they had been working "diligently" to complete fact discovery and would needed an extension "up to and including April 1, 2016 to complete [fact] discovery in these cases." *Id.* The Court thus endorsed the parties' request for a "limited" extension of discovery until May 1 "to complete outstanding discovery" in the *De La Cruz* case. *Id.* The limited discovery authorized between April 1 through May 1 included:

- The City could depose seven individual Plaintiffs; and

- The City would produce "outstanding management emails for all previously identified witnesses."

*Id.* The Order did not mention, and did not authorize, commencing *new* discovery or serving subpoenas after April 1. The Order makes clear that all *new* discovery had to be served and completed by April 1.

## II.    LEIDOS IS THE CONTRACTOR THAT DEVELOPED CITYTIME

With this background, Plaintiffs served the Subpoena on Leidos on April 13, involving Leidos in the lawsuit for the first time. The Court should understand Leidos' role and history with CityTime to understand the difficulty Leidos would have in complying with the Subpoena.

---

[3]    *See* Order, Oct. 28, 2015 (*Foster* ECF No. 47; *De La Cruz* ECF No. 45) (30 day extension); Order, Dec. 10, 2015 (*Foster* ECF No. 67; *De La Cruz* ECF No. 65) (extension to Jan. 23, 2016); Order, Jan. 28, 2016 (*Foster* ECF No. 80, *De La Cruz* ECF No. 78) (extension to Mar. 11, 2016).

### A.    Leidos Developed CityTime from 2000 to 2011 Under Contract to the City

Leidos developed CityTime under a large and oft-amended contract with the City.  After

a predecessor contractor experienced difficulties, Leidos assumed the contract in 2000.  Under

the direction and using specifications of the City, Leidos designed and implemented CityTime

and implemented it in 65 City agencies.  *See* Declaration of Michele M. Brown ("Brown Decl.")

¶¶ 6-7; City Mem. at 2 (Leidos "is the third-party vendor that was engaged by the City to design,

develop, implement and maintain the City's electronic timekeeping system, CityTime.").

Leidos' work on the CityTime contract was run out of its New York City office.  Brown

Decl. ¶ 8.  Over the twelve-year contract, approximately 140 Leidos different employees worked

on CityTime, with a peak of 40 full-time equivalents at any time.  *Id.* ¶ 9.  The vast majority of

the work, including learning the City's specifications and developing and creating the software,

was performed by hundreds of subcontractor employees.  *Id.*

After Leidos deployed, installed and tested CityTime at various City agencies, the City

took control of the system in 2011.  *Id.* ¶¶ 10-11.  Leidos understands that the City has been

using CityTime ever since.  *Id.* ¶ 19.

### B.    Leidos Learned in 2010 that It Was the Victim of a Massive Fraud

Towards the end of the completion of the CityTime contract, Leidos came to learn that a

massive insider fraud occurred in CityTime that victimized both Leidos and the City.  Leidos'

Program Manager and Chief Systems Engineer conspired with unscrupulous subcontractors to

defraud the City by taking kickbacks from subcontractors and causing the City to overpay for

CityTime.  *Id.* ¶¶ 12 & 14.

In late 2010, Leidos received a subpoena from the U.S. Attorney's Office of the

Department of Justice ("USAO"), which had commenced a grand jury investigation of the fraud.

Eventually, multiple people—including Leidos' Program Manager and Chief Systems

Engineer—were convicted and some are now serving long sentences in federal prison. *Id.* ¶¶ 13-14. To resolve claims by the City and Government, Leidos entered into a Deferred Prosecution Agreement. The terms of that Agreement were satisfied and it expired after three years. *Id.* ¶ 15.

### C.    Leidos Parted Ways with the City in 2011 and Divested all of Its Resources, Including Employees, It Used to Perform CityTime

After completing its work on CityTime in 2011, Leidos withdrew from New York and has had no involvement in CityTime since 2011. When the CityTime system passed its installation and acceptance tests, the City took over all responsibilities for maintaining, repairing and upgrading CityTime. *Id.* ¶ 19. Leidos has had no role in the use or operation of CityTime since then. *Id.* ¶ 18. To this day, Leidos does no business with the City, or any other state or municipal entity in New York. *Id.* ¶¶ 21 & 72.

Leidos dismantled all of its operations and resources used to perform the CityTime contract. In 2011, Leidos shut down its New York office and terminated many of the managers and other employees who had worked there. *Id.* ¶ 21.

Later, in 2013, Leidos underwent a major corporate reorganization. Leidos separated into two independent, publicly-traded companies (the other is now called SAIC). After the reorganization, no employees who had meaningful involvement on the CityTime contract remained at Leidos; they had either been previously terminated, voluntarily separated from the company, or went to work elsewhere. *Id.* ¶¶ 4 & 22. However, Leidos retained (for accounting and legal purposes) the liability for CityTime. *Id.* ¶ 22. As discussed below, Leidos also retained (in storage) all documentation concerning CityTime. *Id.* ¶ 23.

## III.   THE SUBPOENA COMMANDS LEIDOS TO PRODUCE DOCUMENTS RELATED TO ITS COMMUNICATIONS WITH THE CITY ON CITYTIME

Now, five years after it ceased work on CityTime and lost all of its knowledgeable personnel, Leidos is subject to a subpoena requiring it to unearth archived documents about its

development work over a twelve-year period. On April 13, 2016, Plaintiffs served on Leidos the Subpoena requiring that four categories of documents be produced at counsel's offices in Washington, D.C. by April 29, 2016.[4] The four categories of documents are:

1. Any and all documents, including but not limited to notes and memoranda, relating to any meetings with the City of New York and its representatives in which the parties discussed programming CityTime to ensure compliance with the Fair Labor Standards Act;

2. Any and all documents, including but not limited to notes and memoranda, reflecting the decision by the City of New York and its representatives to use the term "uncompensated time" in the CityTime system;

3. Any and all documents, including but not limited to notes and memoranda, reflecting instructions given to Leidos, Inc. by the City of New York and its representatives relating to the language included in the CityTime system regarding information provided to employees; and

4. Any and all documents, including but not limited to notes and memoranda, reflecting-the specific application of the CityTime system to employees of the New York City Administration for Children's Services.

Essentially, Plaintiffs ask Leidos to turn over records of the information *it obtained from the City* about how the City intended CityTime to comply with FLSA. The Subpoena contains **no** time limitations, nor any limitations as to where or with whom these meetings and communications occurred.

During the meet and confer, Plaintiffs agreed to slightly modify the Subpoena: First, they agreed to withdraw Category No. 3. Second, they agreed to limit the time frame of responsive documents to a three-year period of 2008 to 2010.

---

[4]      The following day, Plaintiffs also served a duplicate subpoena on Leidos' registered agent in New York, with identical categories of documents. Brown Decl. ¶ 2. The New York subpoena is not a subject of this motion.

IV.     **COMPLIANCE WOULD IMPOSE AN
        ENORMOUS AND UNDUE BURDEN ON LEIDOS**

Upon receiving the Subpoena, Leidos immediately determined that compliance would require a staggering effort and cost.  The sheer size of the CityTime program, coupled with Leidos' dismantling of all of its CityTime resources, leaves Leidos entirely unprepared to locate the documents Plaintiffs seek.

A.      **Leidos Has Over 11 Million Pages of CityTime-Related
        Documents, but All in Offsite Storage and Archives**

In its response to subpoenas about CityTime from the USAO, Leidos' in-house counsel supervised the collection of paper and electronic records generated by the CityTime contract. Brown Decl. ¶ 16.  Leidos gathered other CityTime documents at the time of the corporate separation from SAIC.  *Id.* ¶ 23.

In all, Leidos estimates it has ***over 11 million pages*** of documents related to CityTime, consisting of electronic and paper records.

About 10.4 million pages reside on a computer database—but that database is in an offsite archive with a third-party vendor, meaning, Leidos has no direct access to it.  Leidos would have to pay the vendor to "restore" the archive and "host" it on a network, to give Leidos the ability to look at and search through the documents.  *Id.* ¶¶ 26 & 28.

About another 1 million pages are in nearly 500 unsorted and uncatalogued boxes, now in offsite storage with another vendor.  *Id.* ¶¶ 32-24, 58.  Leidos also has an undetermined number of additional electronic files and copied Outlook email folders on imaged hard drives.  *Id.* ¶¶ 29-31, 39.

### B.      Leidos Would Need About 23 to 44 Weeks to Restore and Review These Documents to Comply with the Subpoena

If Leidos were to try to find documents responsive to the Subpoena within this stored and offsite mountain of documents, it would need many weeks to do so.

***Restore Archived Database.***  Leidos has been in contact with the vendor that maintains the archive of the database containing an estimated 10.4 million pages.  The vendor reports it will need approximately two weeks just to "restore" the database, that is, to convert the archive into an online database that Leidos can actively search through and retrieve documents page by page.  *Id.* ¶¶ 38-39.

***Scan Paper Documents.***  Leidos has no way of easily reviewing the nearly 500 boxes of paper documents.  Typically, Leidos would need to scan the documents into computer images, and then use software to try to "read" the images into computer-searchable text, a dubious proposition particularly for documents as much as 16 years old.  Leidos is unsure how many of the boxes it would need to scan; this process could take 60 to 90 days.[5]  *Id.* ¶¶ 40-43.

***Develop Search Terms.***  Once the documents are in a database, Leidos would develop and refine search terms to try to locate potentially-responsive documents.  This is an iterative process; the search terms need to result in a manageable number of "hits," but must be broad enough to capture all potentially responsive documents.  Normally, this process involves employees who had first-hand experience on the project, who can guide the development of search terms based on the jargon and terms used in the project; but Leidos has no employees who

---

[5]      Plaintiffs' agreement to limit the time frame of responsive documents to the three-year period of 2008 to 2010 does not reduce the scope of this effort; all documents in the boxes must be scanned and optically read, so that time-limiting searches can identify the responsive documents.

worked on CityTime.  *Id.* ¶¶ 44-46.  Leidos estimates the development of search terms will take

another two weeks.

***Review of Documents.***  Leidos then has to review, page by page, the documents

identified by the search terms.  This is an enormous undertaking.  *Id.* ¶¶ 47-53

If, say, only 5 percent of all CityTime documents are identified by the search terms,

Leidos would need to review over 500,000 pages.  *Id.* ¶ 56.  Five percent is a low, conservative

figure; the Subpoena refers to "meetings" held with the City, which is pretty much what Leidos

employees did all the time for twelve years.  While the Subpoena focuses on particular topics of

those meetings, Leidos has no idea which employees worked on those particular features of

CityTime, or when.  *Id.* ¶ 55.  It is entirely possible Leidos might end up reviewing 10 percent of

all of the CityTime documents (that is, over 1 million pages).  *Id.* ¶ 56.

To review 500,000 to one million pages with a relative large (eight-person) team of

contract reviewers, Leidos would need ***18 to 35 weeks***.  *Id.* ¶ 57.  That number would grow if the

percentage of documents needing to be reviewed on an individual basis was larger than the

conservative figure Leidos is estimating.  *Id.* ¶ 58.  It could also grow by another four weeks if

Leidos has to review even just a small portion of the paper documents currently stored in offsite

boxes—and that assumes those documents correctly scan into the database so that they are word-

searchable.  *Id.*

The challenge of finding responsive documents does not lessen significantly if the

Plaintiffs narrow the scope of the Subpoena.  Leidos must still compile all of its documents into a

word-searchable database, and then run searches to find the documents.  Narrowing the scope of

the Subpoena could result in fewer documents to review page for page, but starting with a base

of 11.4 million unsorted documents means that finding the responsive documents is the proverbial search for a needle in a haystack.

*__Privilege and Confidentiality Reviews__*.   Leidos must also review these documents for privileged communications and for confidential information.   Leidos is aware that the City asserts that all of these documents are *confidential to the City*, pursuant to terms of the CityTime contract. *Id.*¶¶ 49-52.   Leidos would need additional time to obtain clearance to review any confidential documents, as well as to redact or withhold privileged documents. *Id.* ¶ 61.

*__Production__*.   After identifying responsive documents for release, Leidos (through its vendor and law firm) would need to prepare and finalize the documents for production.   This would be done on a rolling basis, but adds a week or so to the time to complete the final production. *Id.* ¶¶ 60-62.

*__Conclusion__*.   In all, Leidos conservatively estimates it might need at least **23 weeks** to produce these documents, although that time could even double.   Narrowing the scope of the Subpoena will not materially reduce the effort, because Leidos must still find and restore the CityTime records, and then must still search all of them for whatever particular documents Plaintiffs demand. *Id.* ¶ 63.

### C.   Leidos Estimates That the Cost of This Massive Effort Would Be Around $1 Million

The cost will reflect the enormity of the effort.   Based on similar-size document retrieval and review efforts in the past, Leidos estimates that it will cost approximately **$750,000 to $1.5 million** to respond to the Subpoena. *Id.* ¶ 65.   These costs include vendor charges for restoring and maintaining the archives, scanning about 500 boxes of documents, database administrator costs for overseeing the review and cataloging of documents, the time of the document reviewers (the largest cost), and outside counsel (including for privilege review). *Id.*

## STANDARD OF REVIEW

Upon a "timely motion," the court "must quash or modify" a subpoena when it:

(i)     "fails to allow a reasonable time to comply";

(ii)    "requires a person to comply beyond the geographical limits specified in
        Rule 45(c)";

(iii)   "requires disclosure of privileged or other protected matter . . ."; or

(iv)    "subjects a person to undue burden."

Rule 45(d)(3)(A).  The party issuing a subpoena "must take reasonable steps to avoid imposing

undue burden or expense on a person subject to the subpoena."  Rule 45(d)(1).  Similarly, courts

must be "sensitive to the costs imposed on third parties" and "safeguard non-party subpoena

recipients from significant expense resulting from compliance."  *Educ. Fin. Council v. Oberg*,

No. 10-mc-0079-JDB, 2010 WL 3719921, at *2 (D.D.C. 2010).

The recent amendments to Fed. R. Civ. P. 26 are also relevant.  They have "subtly

narrowed" the scope of discovery, *Ye v. Cliff Veissman, Inc.*, No. 14-cv-01531, 2016 WL

950948, at *2 (N.D. Ill. 2016), such that all discovery must now be:

> proportional to the needs of the case, considering the importance of
> the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving the issues,
> and whether the burden or expense of the proposed discovery
> outweighs its likely benefit.

Rule 26(b)(1).  The general limitations in Rule 26 on discovery overall govern subpoenas under

Rule 45 as well.  *Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007).

## ARGUMENT

Plaintiffs may have thought that Leidos could simply comply with the Subpoena, but in

fact it poses an enormous, undue burden.  In addition, it is untimely and the materials should

logically be obtained from the City.

- 14 -

## I.   THE SUBPOENA IS UNTIMELY AND DOES NOT AFFORD LEIDOS A REASONABLE TIME TO COMPLY

Plaintiffs served the Subpoena far too late.  Discovery of new information closed twelve days before they served it.  But even if it were timely served, it is still improper because Leidos cannot reasonably comply either within the time frame set in the Subpoena (April 29) or before the cutoff of limited, extended discovery (May 1).

### A.   The Subpoena Is Untimely

The Subpoena was served on April 13, twelve days *after* the close of discovery.  As explained earlier, the New York court—based on representations by Plaintiffs—ordered that the cutoff for all *new discovery* was April 1.  The court allowed a "limited" extension until May 1, but only to complete "outstanding" discovery that was already intended but not finished yet, consisting of the taking of some party depositions as well as the production of some emails by the City.  *See* Background, Part I.D *supra*.  The parties did not ask for, and the New York court did not authorize, the initiation of any new discovery—such as the service of third-party subpoenas —during the "limited" extension after April 1.  *Id.*

This alone provides a basis to quash the Subpoena:  Plaintiffs had no authority to serve it after the close of discovery.  *Cf. Corrinet v. Burke*, No. 12-cv-01092-CRC, 2014 WL 2208781, at *1-2 (D.D.C. 2014) (subpoenas not authorized because discovery had closed); *Karagiannopoulos v. City of Lowell*, No. 05-cv-401, 2008 WL 948261, at *1 (W.D.N.C. 2008) (quashing subpoena issued three days after the discovery close); *Ellis v. City of N.Y.*, 243 F.R.D. 109, 112 (S.D.N.Y. 2007) (same).

Leidos anticipates that Plaintiffs will contend they served it within days after conducting the Rule 30(b)(6) deposition of a City representative.  That might be so, but it provides no excuse.  The New York court still did not authorize new rounds of discovery after April 1.  If

- 15 -

Plaintiffs felt it necessary to open a whole new branch of discovery, they needed to ask for permission to do so.  Furthermore, Plaintiffs cannot claim ignorance of the subjects of the Subpoena as something they only learned at the last minute.  Determining that Leidos was the CityTime contractor only required a single Google search.  Instead, the Subpoena appears to be a response to the fact that the City is failing to produce the requested documents, requiring repeated motions practice in the lawsuits.  Whether the City has an obligation to produce the documents it controls is a question for the New York court; but Plaintiffs had no authority to end-run their litigation with the City and serve an out-of-time subpoena on a third party.

**B.      Leidos Does Not Have a Reasonable Time to Comply**

Even if the Subpoena were deemed to be timely served on April 13, the Court should still quash it because it does not afford Leidos a reasonable time to comply.

The court "must" quash a subpoena if it fails to allow a "reasonable time" for the recipient to comply.  Fed. R. Civ. P. 45(d)(3)(A)(i).  The reasonableness of time depends on the effort that will be required to comply with the Subpoena; for a very broad subpoena like this one requiring substantial effort to comply, a reasonable time can mean many weeks or months.  *E.g.*, *Alexander v. F.B.I.*, 186 F.R.D. 12, 15 (D.D.C. 1998) (retroactively granting subpoenaed non-party's request to allow roughly three months to produce a "voluminous amount of material").  Even seemingly narrow subpoenas sometimes require several weeks for a response.  *E.g.*, *Deakins v. Pack*, No. 10-1396, 2012 WL 626200, at *2 (S.D. W. Va. 2012) (allowing a subpoenaed non-party hospital more than five weeks to produce two individuals' medical records).[6]

---

[6]      Leidos anticipates that Plaintiffs will cite case law that holds 14 days is generally deemed a sufficient time to comply with a subpoena.  Plaintiffs will not, however, be able to cite any case that gives a recipient only 14 days to respond with the massive effort that this Subpoena requires.

Leidos cannot respond in two weeks.  Brown Decl. ¶ 25.  For all the reasons explained above, Leidos requires many months to respond.  The Court should quash the Subpoena.[7]

### C.      Leidos Cannot Comply Before Close of the Limited Extension of Discovery

A third reason the Subpoena is untimely is that Leidos does not have time to comply before the close of discovery—even assuming the May 1 close applies, which as shown above it does not.

As with any discovery request, the Subpoena must be served in sufficient time before the close of discovery so that a response can be made before the close.  *Nguyen*, 2016 WL 320152, at *2 (quashing subpoena that failed to provide a reasonable time to respond before the close of discovery); *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 445 (D. Minn. 1997) (granting plaintiff's motion to prohibit defendant from serving or enforcing subpoenas *duces tecum* on third parties which have a return date *after* the close of discovery).

Plaintiffs served the Subpoena with only 18 days remaining in the extension for completion of existing discovery.  As explained above, Leidos cannot possibly comply within three weeks' time.  Even if the New York court extended discovery for another month, or two, or three, it would still not be enough time.  There is no point in having Leidos respond to this Subpoena, so the Court should quash it.

---

Fourteen days is the norm for documents that are immediately and readily available, easily identified, and simple to produce—that is not the situation here.

[7]      For instance, in *Nguyen v. La. State Bd. of Cosmetology*, No. 14-80-BAJ-RLB, 2016 WL 320152, at *2 (M.D. La. 2016), the court quashed a subpoena that was served at the end of discovery with a return date before the close.  Because the subpoena sought a "large amount of documents," the short time remaining in discovery was not reasonable for a response, and a reasonable time would have pushed the response beyond the discovery close.  That is precisely the situation here.

## II.     THE SUBPOENA PLACES AN ENORMOUS UNDUE BURDEN ON LEIDOS

Even if Plaintiffs survive all of these obstacles, the Court "must" still quash the Subpoena because it places an "undue burden" on Leidos.  Rule 45(d)(3)(A)(iv).

Courts look at numerous factors to determine whether a subpoena imposes an "undue burden," including (1) the relevance of the materials sought; (2) the requesting party's need; (3) the breadth of the request; (4) the time period covered by the request; (5) the particularity with which the requested materials are described; and (6) the burden imposed.  *Educ. Fin. Council*, 2010 WL 3719921, at *2.  General considerations for discovery under Rule 26 also apply, such as (1) whether the discovery is duplicative or cumulative; (2) whether there is a more convenient source for the discovery; and (3) whether the burden or expense outweighs the benefit.  *Id.*; *Watts*, 482 F.3d at 509.

Given the breadth of the Subpoena and the time that has passed, Leidos would incur an "undue burden" by any measure.  Furthermore, because of the inordinate cost, its electronic documents are "not reasonably accessible" and Leidos has no obligation to produce them.  Rules 26(b)(2)(B) & 45(e)(1)(D); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 247 F.R.D. 567, 570 (D. Minn. 2007) (database was "inaccessible" because of the high cost to restore and maintain it); *Roberts v. Prudential Ins. Co. of Am.*, No. 12-CV-1085-L DHB, 2013 WL 1431725, at *6 (S.D. 2013) (granting protective order where the documents could not be extracted from its database "without substantial difficulty").

### A.     Leidos Would Incur Enormous Expense to Restore, Search for, Review, and Produce Responsive Documents

A cost of around $1 million and 23 to 44 weeks' time constitutes an "undue burden" by any measure.  *E.g.*, *Stevens v. Amtrak*, No. 05-1924-RCL, 2007 U.S. Dist. LEXIS 45761, at *9-10 (D.D.C. 2007) (quashing a subpoena for documents dating back more than two years that

would require "significant time and expense to dig up"); *N.C. Right to Life, Inc. v. Leake*, 231

F.R.D. 49, 52 (D.D.C. 2005) (quashing subpoena to "a relatively large organization," where it

would have required four to six staff members' time for a month to locate documents, and more

time from in-house and outside counsel); *see also Best Buy Stores*, 247 F.R.D. at 570 (costs of

having to restore and search database created in a prior lawsuit constituted an undue burden).

Further hampering Leidos' response, Leidos no longer has any management or

employees on staff who can help direct or assist with the search. Courts recognize the "undue

burden" imposed by organizational changes over time. *E.g.*, *US Bank Nat'l Ass'n v. PHL

Variable Ins. Co.*, No. 12-civ-6811, 2012 WL 5395249, at *3-4 (S.D.N.Y. Nov. 5, 2012)

(acknowledging the increased difficulty in locating documents where subpoena recipient had

undergone several organizational changes).

### B.     The Subpoena Seeks Documents Available From the City—<br>Which Plaintiffs Already Have Obtained or Should Have Obtained

No countervailing consideration justifies this enormous expense on Leidos: Plaintiffs

have little or no need for Leidos' information—they already obtained, and are in the process of

obtaining, these documents from the City. The Subpoena is therefore duplicative of prior

discovery and improper. *Watts*, 482 F.3d at 509.

An "undue burden" exists under Rule 45 where the discovery sought from the non-party

can be obtained from a party to the case. *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454

(D.D.C. 2002) ("In addition, the discovery sought is obtainable from another source [a party] that

is more convenient, less burdensome, and less expensive."). For instance, for communications or

documents exchanged between a party and a non-party, discovery on those materials should be

directed at the party and not at the non-party. *E.g.*, *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D.

16, 18 (D.D.C. 2013) (quashing subpoena for communications between a third party and defendant); *Educ. Fin. Council*, 2010 WL 3719921, at *3-4 (same).

For multiple reasons, Plaintiffs should direct their discovery about the requested documents to the City and not to Leidos:

### 1.    *The Subpoena Requests Information the City Should Possess*

The Subpoena commands production of four categories of documents—each of which concerns information the City possesses.  Plaintiffs have had seventeen months to obtain these same documents from the City.  Plaintiffs cannot justify why they now have to burden Leidos with this discovery.[8]

**Category 1:  Meetings with the City.**  Category 1 requests "any and all documents" about "meetings" between the City and Leidos concerning CityTime's compliance with FLSA. Plaintiffs should obtain discovery on those joint meetings from the City, not Leidos.

**Category 2:  Decision by the City.**  Category 2 requests "any and all documents . . . reflecting the decision by" the City to use the phrase "uncompensated time" in CityTime.  The Plaintiffs' discovery about the City's "decision" should be directed at the City, not at Leidos.

**Category 4:  City's Use of CityTime**.  Category 4 requests "any and all documents" concerning the "specific application of the CityTime system to employees" of the City.  Any discovery about the City's or City employees' use of CityTime should be directed to them—not to Leidos.  Leidos merely created and delivered CityTime to the City; Leidos has had no involvement in the use of CityTime by the City or its employees.  Brown Decl. ¶ 69.

---

[8]     Plaintiffs withdrew Category 3 during a meet and confer on April 28.

### 2. *The City Produced Documents and Testimony on the Very Topics Raised in the Subpoena*

The Subpoena is duplicative and unnecessary because Plaintiffs already have answers to their questions about CityTime. The City provided a Rule 30(b)(6) deposition witness, who was involved in the City's development of CityTime and who testified at length about the design and operation of CityTime.

Plaintiffs are also not done receiving documents from the City on these issues. Plaintiffs' counsel admitted that they expect the City to continue producing documents about the very same issues, and that these productions theoretically could moot, to some extent, some aspects of the Subpoena. Counsel anticipated further motions practice on the City's production of these materials. Thus, Plaintiffs have no basis for asking Leidos to produce the documents. If the City has them and produces them (with or without a court order), Plaintiffs have no need for discovery from Leidos. If the New York court does not order further productions by the City, then Plaintiffs cannot impose an obligation on non-party Leidos that the City would not have. Either way, the Subpoena is duplicative of discovery on a party and thus inappropriate.

Balancing the enormous burden on Leidos with the *de minimis* value of the duplicative discovery on Leidos, the Court should quash the Subpoena. *Stevens*, 2007 U.S. Dist. LEXIS 45761, at *9 (quashing subpoena, even though information was relevant to claims, due to size of burden to comply).

### C. The Categories of Documents Are Far Too Broad and Vague

Even if any of Leidos' documents related to CityTime have any relevance to Plaintiffs' claims, the Subpoena is massively overbroad and not narrowly tailored to the actual documents needed.

For instance, each of the four categories requests "any and all" documents on the four topics—thus creating the very likely possibility that Leidos will end up producing the same information repeatedly in different documents.  Instead of asking for documents that could answer very specific questions Plaintiffs might have, Plaintiffs have taken the opposite approach and demanded a potentially voluminous production that may or may not interest them.  Because the Subpoena is overbroad, it presents an "undue burden" and the Court should quash it.  *Cf. Andrades v. Holder*, 286 F.R.D. 64, 66 (D.D.C. 2012) (quashing subpoena not "narrowly tailored" to information that would be relevant to plaintiff's claims); *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 425 (Fed. Cir. 1993) (subpoena was overly broad and not relevant to the narrow issue of case).

## III.   IF THE COURT WERE TO ORDER COMPLIANCE, IT SHOULD REQUIRE PLAINTIFFS TO PAY THE COSTS

Finally, if the Court believes Plaintiffs have overcome all the obstacles, including demonstrating a compelling need for the documents, and if the Court is willing to overlook the gross untimeliness of the Subpoena, then Rule 45 gives the Court a mechanism to provide relief to Leidos for the cost (but not the effort).

Rule 45(d)(2)(B)(ii) requires that, if this Court were to order Leidos to comply with the Subpoena, the Court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Consequently, if the Court does not quash the Subpoena, the Court should order Plaintiffs to reimburse Leidos for the entire cost of its efforts to restore, search for, review, and product responsive documents.  *In re Am. Nurses Ass'n*, No. 15-1481, 2016 WL 1381352, at *3 (4th Cir. 2016) (shifting cost of production where subpoena recipient warned of significant expense); *Drfp, LLC v. Republica Bolivariana de Venezuela*, No. 2:04-CV-793, 2016 WL 491828, at *1 (S.D. Ohio Feb. 9, 2016) (shifting costs of response to

subpoena; "serving subpoenas for a host of six-year-old documents . . . and allowing only thirteen days for compliance . . . are not the actions of a party wishing to avoid cost and expense").  Plaintiffs will likely balk at the thought—demonstrating that their need for the documents is not nearly as strong as they now claim.

## CONCLUSION

For these reasons, Leidos respectfully moves that the Court grant Leidos' motion and quash the Subpoena.

Dated:  April 29, 2016

Respectfully submitted,

By: _____

Douglas P. Lobel (DC Bar No. 395508)
David A. Vogel (DC Bar No. 441289)
COOLEY LLP
11951 Freedom Drive, Suite 1500
Reston, Virginia 20190-5656
Tel:      (703) 456-8000
Fax:      (703) 456-8100
E-mail:  dlobel@cooley.com
E-mail:  dvogel@cooley.com

*Counsel for Leidos, Inc.*

# EXHIBIT 1

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| KEISHA FOSTER, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:14-cv-04142-PGG |
| CITY OF NEW YORK | ) |
| | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                LEIDOS, INC.
Registered Agent: CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, VA 23060

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHMENT

| Place: Woodley & McGillivary LLP | Date and Time: |
|---|---|
| 1101 Vermont Ave. NW, Suite 1000 Washington, DC 20005 | 04/29/2016 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  4/12/16

CLERK OF COURT

                                                OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
KEISHA FOSTER, et al.                                , who issues or requests this subpoena, are:

Gregory K. McGillivary, Woodley & McGillivary LLP, 1101 Vermont Ave. NW, Suite 1000, Washington, DC 20005, (202) 833-8855

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## ATTACHMENT TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

**YOU ARE COMMANDED** to produce at **Woodley & McGillivary LLP, 1101 Vermont Ave. NW, Suite 1000, Washington, DC 20005 on April 29, 2016 at 5:00 p.m.,** the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

1.  Any and all documents, including but not limited to notes and memoranda, relating to any meetings with the City of New York and its representatives in which the parties discussed programming CityTime to ensure compliance with the Fair Labor Standards Act;

2.  Any and all documents, including but not limited to notes and memoranda, reflecting the decision by the City of New York and its representatives to use the term "uncompensated time" in the CityTime system;

3.  Any and all documents, including but not limited to notes and memoranda, reflecting instructions given to Leidos, Inc. by the City of New York and its representatives relating to the language included in the CityTime system regarding information provided to employees; and

4.  Any and all documents, including but not limited to notes and memoranda, reflecting the specific application of the CityTime system to employees of the New York City Administration for Children's Services.

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:14-cv-04142-PGG

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                              *Server's signature*

                                     _____
                                              *Printed name and title*

                                     _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 2

~~Case 1:14-cv-04142-PGG-JCF   Document 93   Filed 03/14/16   Page 1 of 3~~

LAW OFFICES

WOODLEY & McGILLIVARY

1101 VERMONT AVENUE, N.W.

SUITE 1000

WASHINGTON, D.C. 20005

TELEPHONE. (202) 833-8855

FAX. (202) 452-1090

E-MAIL. INFO@WMLABORLAW.COM

THOMAS A. WOODLEY
GREGORY K. McGILLIVARY
DOUGLAS L. STEELE
MOLLY A. ELKIN
BALDWIN ROBERTSON
DAVID RICKSECKER
MEGAN K. MECHAK
SARA L. FAULMAN
CHRISTOPHER M. FRANZONI
DIANA J. NOBILE
REID COPLOFF
MICHAEL R. WILLATS
SARA A. CONRATH
ROBIN L.S. BURROUGHS
DONNA K. McKINNON

EDWARD J. HICKEY, JR.
(1912-2000)

OF COUNSEL
NANCY B. STONE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/14/16

March 11, 2016

**VIA ECF and FACSIMILE**

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
500 Pearl Street, Room 2204
New York, NY 10007

MEMO ENDORSED

The Application is granted. *The April 7, 2016 Conference is adjourned to May 5, 2016 at 10:00 A.M. The Clerk will terminate Dkt. Nos. 83 and 84 in 14 Civ. 4142 and Dkt. Nos. 90 and 91 in 14 Civ. 9220.*

SO ORDERED:

*Paul S. Gardephe*

Paul G. Gardephe, U.S.D.J.

Dated: *March 14, 2016*

Re:   *Foster, et. al. v. City of New York,* Case No. 14-cv-4142 (PGG)
       *De La Cruz, et. al. v. City of New York,* Case No. 14-cv-9220 (PGG)

Dear Judge Gardephe:

I represent the plaintiffs in the above-captioned cases. I write on behalf of both parties to respectfully request a brief extension of time of 21 days from March 11, 2016, up to and including April 1, 2016, to complete Phase One discovery in these cases. The parties also request an additional limited extension beyond that date, up to and including May 1, 2016, to complete outstanding discovery related to the *De La Cruz* AJOS plaintiffs and management witnesses in both cases.

As set forth below, the parties have been working diligently to complete Phase One discovery, but a limited amount of additional time is necessary. This is the parties' third request for an extension. The parties met and conferred about this matter in-person on March 4, 2016, and exchanged follow-up correspondence on March 7, 2016, and March 9, 2016. The parties agree that this limited extension of time is appropriate.

**Extension of Phase One Discovery Through April 1, 2016**

With the Court's permission to extend Phase One discovery up to and including April 1, 2016, the parties have agreed that the following will be completed:

Hon. Judge Gardephe
March 11, 2016
Page 2

- The City will produce a witness to testify regarding the topics identified in plaintiffs' Rule 30(b)(6) Notice on FLSA Compliance on March 23, 2016, at 9 am;

- The City will produce a witness to testify regarding the topics identified in plaintiffs' Rule 30(b)(6) notice on FLSA Training. This deposition will occur on March 29, 30, or 31, 2016, or another mutually agreed upon date;

- The City will provide the complete results of the rerun of CityTime and FISA data for all plaintiffs (including plaintiff title and suffix) in both cases from the beginning of the recovery period through January 2016;

- The City will provide a complete response to plaintiffs' request for production of documents, specifically those items outlined in plaintiffs' March 2, 2016, letter and which were identified by the City's previously deposed Rule 30(b)(6) witnesses;

- The City will provide signed transcripts from the Rule 30(b)(6) witnesses who have been deposed thus far, as well as responses to any "blanks" left in the record, by March 17, 2016, so that plaintiffs may review these responses with adequate time to call back the witnesses if necessary; and

- The City will respond with its position on and status of the case management issues outlined in plaintiffs' December 28, 2015, January 18, 2016, and March 2, 2016, letters, which relate to plaintiffs who were filed in the incorrect case and missing CityTime/FISA data in both cases (including data for *Foster* Phase One plaintiffs Roseto, Farris, and Marquis.).

**Limited Extension Through May 1, 2016**

With the Court's permission, the parties agree that a limited extension up to and including May 1, 2016, is necessary and appropriate. By May 1, 2016, the parties agree to complete the following:

- The City will move to dismiss the newly identified *De La Cruz* AJOS plaintiffs who fail to fully respond to discovery by March 11, 2016[1]. The parties will then meet and generate a randomized list of the remaining AJOS plaintiffs, and will randomly select the number of AJOS plaintiffs needed to replace those AJOS plaintiffs who are dismissed for failure to comply with discovery by April 1, 2016. The newly selected plaintiffs will have 30 days from the date they are

---

[1] The City will also move to dismiss any other Phase One plaintiffs in both matters that failed to fully respond to discovery and appear for noticed deposition by April 1, 2016, as set forth in the City's correspondence dated March 1, 2016, and March 3, 2016.

Hon. Judge Gardephe
March 11, 2016
Page 3

identified to respond to discovery and appear for a deposition. The parties will
continue this process, until a total of seven new AJOS plaintiffs (including
plaintiffs Pamela Miller and Diane Ramos, who already are fully responsive),
have responded to discovery. If Plaintiffs fail to produce seven new AJOS
plaintiffs by May 1, 2016, the parties agree to a limited extension of discovery to
identify and depose the remaining AJOS plaintiffs.

- The City will produce the outstanding management e-mails for all previously
  identified witnesses on a rolling basis in both cases beginning no later than March
  25, 2016, and, based on the number of e-mails produced, the plaintiffs will
  thereafter offer deposition dates in early and mid-April 2016. The emails will be
  produced within sufficient time to permit the plaintiffs to review the emails prior
  to the deposition (i.e., a minimum of 10 days before the deposition). Because the
  City's vendor has yet to provide the City with the results of the search for
  management e-mails, this limited extension is necessary.

**Expert Discovery Schedule**

With the Court's permission, the parties have agreed upon the following schedule for
expert discovery:

- Parties Identify Experts – March 23, 2016
- Plaintiffs' Submission of Expert Report – April 7, 2016
- Defendant's Submission of Expert Report – May 9, 2016
- Expert Deposition to be Completed – June 6, 2016

Based on the foregoing information, the parties jointly and respectfully request that their
motion for an extension of time to complete discovery be granted.

Sincerely,

WOODLEY & McGILLIVARY

Gregory K. McGillivary
*Counsel for Plaintiffs*

cc:   Felice B. Ekelman, counsel for Defendant (by ECF)
      Sarah K. Hook, counsel for Defendant (by ECF)
      Hope Pordy, counsel for Plaintiffs